**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| **STEVEN J. NEWTON,** | |
| **Plaintiff,** | |
| **v.** | **1:08-cv-2321-WSD** |
| **ROBERT M. GATES,**<br>**Secretary of Defense, et al.** | |
| **Defendants.** | |

## OPINION AND ORDER

This matter is before the Court on Defendants'[1] Motion to Dismiss [18]

Plaintiff Steven J. Newton's ("Plaintiff" or "Petitioner") Amended Complaint [1].

Plaintiff asserts a laundry list of claims, including claims for breach of contract,

involuntary servitude, unconstitutional taking of his property and liberty interests

---

[1] Though Plaintiff asserts this action against Defendants in their official and individual capacities (Am. Compl. at p 3), the individual Defendants have not been served, as required by Rule 4(e) of the Federal Rules of Civil Procedure. Defendants argue that Plaintiff's allegations and claims for relief demonstrate that this is an official capacity suit and the real party in interest is the United States. Plaintiff did not respond to this argument. Failure to respond to an opposing party's argument results in abandonment of the claim. See Bute v. Schuller Int'l, Inc., 998 F. Supp. 1473, 1477 (N.D.Ga. 1998) ("Because plaintiff has failed to respond to this argument or otherwise address this claim, the Court deems it abandoned."). The Court only addresses Plaintiff's claims against Defendants in their official capacities.

without due process, promissory estoppel, and fraudulent misrepresentation. Plaintiff also asserts class action claims on behalf of all past, current, and future Reserve Commissioned Unobligated Officers who have allegedly been unlawfully denied the acceptance of their military resignations. Plaintiff seeks a writ of habeas corpus or mandamus, declaratory and injunctive relief, attorneys' fees, and damages.[2]

## I.    STATEMENT OF FACTS & PROCEDURAL HISTORY

In this action, an Army lawyer who accepted a cash payment in the amount of $10,000 in return for his commitment to serve as a reserve officer up through and including December 2009, seeks to renege on his promise because he perceives that it has some indefinite, speculative, intangible impact on his ability to generate business in his private legal practice.[3] In his action, Plaintiff asserts a laundry list

---

[2] On February 6, 2009, the Court held a hearing on Plaintiff's Motion for Immediate Ruling as to Petition for Writ of Habeas Corpus Only [21], in which Plaintiff sought an immediate ruling on his petition for a writ of habeas corpus or, in the alternative, a temporary restraining order or preliminary injunction against Defendants. Plaintiff was unable to show any reason for an immediate ruling or for temporary injunctive relief, and the Court accordingly denied the motion.

[3] During the February 6, 2009 hearing, the Court specifically asked Plaintiff what was the emergency that required immediate ruling:

THE COURT:        So where we want to begin is what is the emergency,

of claims[4] in seeking to avoid his military commitment, including the claim that his

continued service as a commissioned officer constitutes involuntary servitude.

Plaintiff's claims are meritless, and the positions he takes are not honorable.

Plaintiff is a major in the United States Army Reserves.  On May 4, 1990,

after completing a Reserve Officer Training Corps ("ROTC") program, Plaintiff

---

|  | what threat has been made against you as to action that the Army is going to take that puts you in this imminent risk of requiring me to provide emergency relief to you? |
|---|---|
| MR. NEWTON: | Judge, I would probably distinguish, as I understand the local rules, to make a request for an immediate ruling– |
| THE COURT: | Why don't you answer my question? |
| MR. NEWTON: | To be precise, I don't have an order or anticipate – or knowingly anticipate an order of deployment.  However, I have been directed to do something more meaningful for the unit that the Army declares that I am a member of. It conflicts with some of my private practice obligations and some of the requirements that my clients overseas expect of me. |

Transcript of February 6, 2009 Hearing at 3.  The Court pressed Plaintiff to specifically state the emergency, to which Plaintiff responded: "My Russian clients don't want me connected, and I'm at risk of losing business if I continue to stay in the military or if the military continues to say I'm in the military."  Id. at 3-4. Plaintiff also later stated that his Russian clients would retain him "but the amount of work I will be given will be diminished."  Id. at 16.

[4] The Eleventh Circuit has condemned this type of "shotgun" pleading.  See Moore v. American Federation of Television & Radio Artists, 216 F.3d 1236, 1240-41 (11th Cir. 2000).

was commissioned as a second lieutenant in the Army Reserves.  Amended Compl. at ¶ 3, 5.[5]  After completing his initial eight (8) year commitment of inactive service, Plaintiff continued his appointment as a Reserve Commissioned officer, obtaining the rank of major in 2004.  Id. at ¶ 6.

On or about December 13, 2006, Plaintiff was reassigned from the Ready Reserve to the Selected Reserve,[6] 213th Legal Support Organization (LSO).  Id. at ¶ 8.  On December 29, 2006, Plaintiff signed an agreement entitled "Written Agreement Officer Affiliation Bonus Acknowledgment" (the "Bonus Agreement").  Id. at ¶ 9; Am. Comp. Ex. BB.  The Bonus Agreement[7] states that, in exchange for

_____

[5] The Court notes that Plaintiff's Amended Complaint improperly contains legal argument, citation to authority, and long-winded rhetoric.  Federal Rule of Civil Procedure 8(a)(2) requires the plaintiff to state "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Plaintiff fails to abide by this requirement, and the Court does not consider his improper statements and rhetoric in the Complaint.

[6] The Court notes that the agreement reflecting his reassignment states that Plaintiff agreed to serve in the Selected Reserve, not the Select Reserve as stated in the Amended Complaint.

[7] Plaintiff contends that Defendants' Motion to Dismiss is "procedurally defective" because Defendants have attached the Bonus Agreement and Army Regulation 135-175 to their motion.  First, the Court notes that the Plaintiff has attached the Bonus Agreement and other documents to his Amended Complaint, thereby allowing the Court to consider those documents in ruling on the motion to dismiss.  Second, the Court may consider the Bonus Agreement and Army

a lump sum cash bonus of $10,000 (Bonus Agreement at ¶ 3(b)), Plaintiff agreed as

follows:

> I agree to serve in the Selected Reserve in a critical officer skill, unit, or pay grade that is designated for bonus entitlement by the Secretary of the Army or his delegate . . .

> 2. I shall incur the obligations of this affiliation as follows:

>> a. I hereby agree to serve in the Selected Reserve for not less than three years, the full period of this agreement.

>> b. I shall serve satisfactorily, as prescribed by the appropriate regulations of the United States Army Reserve, the complete affiliation period in the Selected Reserve of the United States Army Reserve according to my written agreement and in the critical skill, unit or grade in which affiliated, unless excused for convenience of the government.

---

Regulations without converting this to a motion for summary judgment because these documents are central to Plaintiff's claims and their authenticity is not disputed.  See Brooks v. Blue Cross & Blue Shield of Fla., Inc., 116 F.3d 1364, 1369 (11th Cir. 1997) ("*where the plaintiff refers to certain documents in the complaint and those documents are central to the plaintiff's claim*, then the Court may consider the documents part of the pleadings for purposes of Rule 12(b)(6) dismissal, and the defendant's attaching such documents to the motion to dismiss will not require conversion of the motion into a motion for summary judgment.") (emphasis added); Atwater v. NFL Players Assoc., 2007 WL 1020848, at *7 (N.D.Ga. Mar. 29, 2007) (citing Maxcess, Inc. v. Lucent Tech., Inc., 433 F.3d 1337, 1340 n. 3 (11th Cir. 2005) ("[A] complaint need not even mention or attach a document in order for the court to consider the document at the motion to dismiss stage, if the document is central to plaintiff's claims and not disputed in terms of its authenticity.").

Bonus Agreement at 1. Plaintiff alleges the Bonus Agreement has not been fully executed by the parties, and he also alleges the Bonus Agreement was forged. Am. Compl. at ¶¶ 9, 22-23. Petitioner also claims the Bonus Agreement contains a "buy-out clause" and that the contractual consideration "was **not** simply $10,000.00 in exchange for three years service in the Select [sic] Reserve." Id. at ¶ 10 (emphasis in original).

On February 7 and 9, 2007, the Army made two direct deposits into the Plaintiff's bank account in the amounts of $6,000 and $4,000, respectively. Id. at ¶¶ 12-13.[8] Plaintiff claims a material reason he was wrongfully and fraudulently induced to sign the Bonus Agreement was that it provided for a lump sum payment of $10,000, and the two payments two days apart was a material breach of the Agreement. Id. at ¶ 14. Plaintiff accepted and retained the $10,000 paid to him. Id. at ¶ 109.

On or about September 15, 2007, Plaintiff tendered his "unqualified resignation" to the United States Army. Id. at ¶ 27. On September 18, 2008, Plaintiff's request for resignation was disapproved. The letter memorandum denying his resignation stated:

---

[8] The payments were less taxes withheld. Id. at ¶¶ 12-13.

1. Request for Unqualified Resignation of Major Newton (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) is disapproved.

2. Pursuant to Army Regulation 135-175, paragraph 6-10a, normally, an obligated officer will not be permitted to resign his office until such time as the obligated period of service is completed. However, a resignation may be approved in cases involving extreme compassionate circumstances, or when it is deemed to be in the overall interest of the officer and the Army.

3. Major Newton incurred a three-year contractual obligation when he accepted a $10,000.00 Bonus to serve in a Troop Program Unit. He remains contractually obligated until 29 December 2009. Major Newton has failed to demonstrate extreme compassionate circumstances warranting acceptance of his resignation.

Am. Compl. Ex. GG, Letter Memorandum dated 18 September 2008.

Plaintiff claims that he is no longer an obligated officer, and that the Defendants' denial of his resignation violates his constitutional rights to due process. Plaintiff asserts numerous other allegations throughout his complaint on behalf of himself and a purported class of past, current, and future commissioned officers whose resignations have been or may be denied.[9]

---

[9] It is interesting to note that Plaintiff has been afforded significant accommodations in allowing him to perform his reserve duty. He has not been required to report to a military base to fulfill his active duty obligations, instead having been allowed to perform his service in his private practice offices. It also does not appear that Plaintiff – unlike other reserve officers (including lawyers) – has ever been called to extended active duty nor has he ever been required to serve in a theatre of operations where hostilities are ongoing.

Plaintiff filed his complaint on July 17, 2008, and Defendants filed their first Motion to Dismiss [2] on September 22, 2008. On October 21, 2008, Plaintiff moved to amend his complaint, and Plaintiff filed his first Amended Complaint [8] on December 2, 2008. Defendants filed their second Motion to Dismiss [18] on December 18, 2008. After a hearing on February 6, 2009, the Court granted Plaintiff's Motion to Amend Complaint and denied, as moot, Defendants' first motion to dismiss. Accordingly, the Court only considers Defendants' second Motion to Dismiss [18] and Plaintiff's Amended Complaint.

## II.    DISCUSSION

A.    Standard for a Motion to Dismiss

Defendants move, pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss this action for failure to state a claim upon which relief can be granted. The law governing motions to dismiss is well-settled. Dismissal of a complaint is appropriate "when, on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action." Marshall County Bd. of Educ. v. Marshall County Gas Dist., 992 F.2d 1171, 1174 (11th Cir. 1993). The court accepts the plaintiff's allegations as true, Hishon v. King & Spalding, 467 U.S. 69, 73 (1984), and considers the allegations in the complaint in the light most

favorable to the plaintiff.  <u>Watts v. Fla. Int'l Univ.</u>, 495 F.3d 1289, 1295 (11th Cir. 2007).  Ultimately, the complaint is required to contain "enough facts to state a claim to relief that is plausible on its face."  <u>Bell Atl. Corp. v. Twombly</u>, 127 S. Ct. 1955, 1974 (2007).   "To survive a motion to dismiss, plaintiffs must do more than merely state legal conclusions; they are required to allege some specific factual bases for those conclusions or face dismissal of their claims."  <u>Jackson v. BellSouth Telecomms.</u>, 372 F.3d 1250, 1263 (11th Cir. 2004) ("[C]onclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal.") (citations omitted).

     B.    <u>Analysis</u>

     Defendants have moved to dismiss Plaintiff's Amended Complaint for failure to state a claim upon which relief may be granted.  Defendants argue that Plaintiff's claims are without merit because he is contractually obligated to serve until December 2009, and because Plaintiff's commission as an officer is for an indefinite term subject to the discretion of the President under 10 U.S.C. § 12203(c).

1.    *Contractual Obligation under the Bonus Agreement*

Plaintiff admits that on December 29, 2006, he signed the Bonus Agreement,

Am. Comp. at ¶ 9 Ex. BB, in which he agreed:

> I agree to serve in the Selected Reserve in a critical officer skill, unit, or pay grade that is designated for bonus entitlement by the Secretary of the Army or his delegate . . .
>
> 2. I shall incur the obligations of this affiliation as follows:
>
> > a. I hereby agree to serve in the Selected Reserve *for not less than three years*, the full period of this agreement.
> >
> > b. I shall serve satisfactorily, as prescribed by the appropriate regulations of the United States Army Reserve, *the complete affiliation period* in the Selected Reserve of the United States Army Reserve according to my written agreement and in the critical skill, unit or grade in which affiliated, *unless excused for convenience of the government*.

Bonus Agreement at 1 (emphasis added).  Army Regulations define an "Obligated

officer" as "[a]n officer who has an obligation incurred by operation of law or by

execution of a contractual agreement to serve in a Reserve status for a specified

period of time."  Army Reg. 135-175 at p. 69.

Defendants claim the Bonus Agreement qualifies Plaintiff as an obligated

officer, subject to the acceptance of resignations of obligated officers policy in

Army Regulations.  The Regulations provide, in relevant part:

a. *Obligated Officers.* Normally, an obligated officer will not be permitted to resign his office until such time as the obligated period of service is completed, except as otherwise provided below.

(1) [The Army] may approve acceptance of a resignation in cases involving extreme compassionate circumstances; or, when such action is deemed to be in the best overall interest of the officer and the Army.

(2) A resignation will be accepted when submitted by an officer who–

(a) Is a chaplain.
(b) Becomes a regular or duly ordained minister of religion.
(c) Must be separated from his military status for the purpose of obtaining ordination to take final vows in a religious order.

Army Reg. 135-175, ¶ 6-10(a). A resignation must include the reasons for submission of the resignation and documentary evidence, when appropriate, to substantiate the reasons for the officer's resignation. Id. at ¶ 6-3. "Resignations will be submitted through appropriate military channels to the commander authorized to take final action thereon. In those instances where final action is restricted to Headquarters, Department of the Army, the resignation will be forwarded by the appropriate commander together with remarks and recommendations." Id.

Plaintiff claims, for various reasons, that the Bonus Agreement is not valid and thus he is not an obligated officer. Reluctantly admitting in his Amended

Complaint that he signed the Bonus Agreement, Plaintiff disputes the authenticity of the Agreement and claims, without any support, that the Agreement has never been executed by the parties and "contains *indicia* of fraud, alterations, and other related wrongful acts by the Defendants." Pl. Resp. at 4 (emphasis in original). Plaintiff also claims, again without any support, that the agreement "clearly permits voluntary separation before the end of the contract, visiciating [sic] any obligation at least as defined by AR 135-175." Id. at 4.

"Enlistment contracts . . . are enforceable under the traditional principles of contract law." Santiago v. Rumsfeld, 425 F.3d 549, 554 (9th Cir. 2005); Peavy v. Warner, 493 F.2d 748, 750 (5th Cir. 1974).[10] "Claims that military induction contracts have been breached are decided under traditional theories of contract law. To establish breach of contract, plaintiff must first show that defendant had an obligation under the contract to act or refrain from acting as plaintiff alleges." Parrish v. Brownlee, 335 F. Supp. 2d 661, 673 (E.D.N.C. 2004) (citing Pence v.

---

[10] The Santiago court noted several exceptions in which traditional contract principles may not apply to enlistment contracts, including issues related to military pay or benefits. Id. at 554 n. 4. The exceptions do not apply here.

<u>Brown</u>, 627 F.2d 872, 874 (8th Cir. 1980)).[11]  In <u>Parrish</u>, the plaintiff was a reserve

officer who signed an enlistment contract and a cadet contract before commencing

an Army ROTC program at college.  <u>Id.</u> at 663.  After completing his eight-year

military service obligation, plaintiff accepted his commission as an officer in the

Army.  <u>Id.</u> at 664.  After being discharged from active duty and transferred to the

Individual Ready Reserves for a time, plaintiff was ordered to report for active

duty.  <u>Id.</u> at 666.  Plaintiff thereafter made several attempts to resign, which were

disapproved by the Army.  <u>Id.</u>  Plaintiff filed suit, seeking injunctive relief and

claiming breach of contract, arbitrary and capricious denial of resignation, and

unconstitutional taking of property and liberty without due process.  <u>Id.</u>  The

<u>Parrish</u> court rejected each of Plaintiff's arguments.  The court held that plaintiff's

---

[11] In <u>Pence</u>, the plaintiff was an Air Force Reserve Officer who entered the
Air Force Medical Scholarship Program after being told he would enter active duty
as a major.  <u>Pence</u>, 627 F.2d at 873.  During his second year of medical residency,
the plaintiff learned that he would enter the Air Force as a captain rather than as a
major.  <u>Id.</u>  After making several unsuccessful attempts to resign his commission,
he reported for active duty and thereafter filed a lawsuit seeking a writ of habeas
corpus on the basis that he had been induced to sign the enlistment contract by the
material misrepresentation that he would enter active-duty status as a major.  <u>Id.</u>
The Eighth Circuit held that the plaintiff was entitled to rescission of his enlistment
contract because a material misrepresentation had been made to him.  <u>Id.</u> at 875.
No material misrepresentations are alleged by Plaintiff here, and the exception in
<u>Pence</u> does not apply.

due process claim failed because plaintiff was a commissioned officer subject to the provisions of 10 U.S.C. § 12203. Id. at 669-70. The court noted that the case was distinguishable from a case involving an enlisted soldier, and "there is ample authority under which the Army must retain jurisdiction over a commissioned officer who has fulfilled his obligated term of service." Id. at 670-71. In rejecting plaintiff's breach of contract claim, the court noted the plain language of the contracts lacked any evidence of the parties' intent to include an affirmative obligation that the Army discharge plaintiff upon completion of his military service obligation. Id. at 674. Finally, the court found the Army's interpretation of its own regulations and reasons for denying plaintiff's resignation not to be arbitrary and capricious. Id.

Plaintiff ignores the clear language of the Bonus Agreement and ignores the governing law. First, Plaintiff argues the Bonus Agreement permits voluntary separation. It does not. The relevant section of the Bonus Agreement states:

> 4. If I fail to commence or complete the service obligation incurred under this agreement for any of the reasons listed below, I understand that recoupment or entitlement to a portion of the bonus agreement will be calculated in accordance with paragraph 5 below: . . .
>
> > [4] c. If I voluntarily separate from the Selected Reserve for any reason (including enlistment or voluntary order to active duty in

> the active forces); other than by death, injury, illness or other impairment not the result of my own misconduct, or an involuntary call-up or mobilization.

Bonus Agreement at ¶ 4.  Paragraph 4 simply establishes that an officer who does not meet his service obligations under a bonus agreement must repay a portion of his $10,000 bonus in the event he fails to fulfill his service obligation.[12]  Paragraph 4(c) merely lists some of the various ways in which separation would trigger the repayment calculation.  The plain language of the Agreement does not, as Plaintiff wishes, grant Plaintiff the right to unilaterally terminate his obligation.  The Bonus Agreement is clear and unambiguous: Plaintiff must serve the full term under the Agreement "unless excused for the convenience of the government."

Second, Plaintiff's efforts to discredit, factually and legally, the Bonus Agreement do not have support or merit.  Though at one point Plaintiff claims the Bonus Agreement was never been executed by the parties, two signed copies of the Agreement exist in the record, and once confronted with an executed agreement, Plaintiff now admits that he signed the contract.[13]  Plaintiff also contends that

---

[12] Paragraph 5 sets forth the method of calculating any repayment due.

[13] During the February 6, 2009 hearing, the following exchange occurred:

THE COURT:        Did you sign the [bonus] agreement that's in the record?

because he did not receive the $10,000 bonus in "one lump sum" upon his reassignment – as the Agreement contemplates – the Army materially breached the Agreement.  The argument is specious.  "Not every departure from the literal terms of a contract is sufficient to be deemed a material breach of a contract requirement, thereby allowing the nonbreaching party to cease its performance and seek appropriate remedy."  Stone Forest Industries, Inc. v. United States, 973 F.2d 1548, 1550 (Fed. Cir. 1992).  The determination of whether a breach is material "depends on the nature and effect of the violation in light of how the particular contract was viewed, bargained for, entered into, and performed by the parties."  Id. at 1551 (citing Restatement (Second) of Contracts, § 241 cmt. a (1981)).

While the Army paid the bonus in two payments of $6,000 and $4,000, these payments were made over two days, Plaintiff did not object to receiving two payments, and he in fact retained the $10,000 he received.  That the payments were made over two days is not a material breach of the terms of the Bonus Agreement.

It is also undisputed that Plaintiff did not sign the Bonus Agreement until sixteen days after his reassignment, meaning the Army could not pay any bonus

---

MR. NEWTON:    I did.

Transcript of February 6, 2009 Hearing at 5.

until he signed the agreement. This also is not a material breach of the Bonus Agreement's provision that Plaintiff be paid "upon [his] reassignment." By accepting and keeping the $10,000 paid to him, Plaintiff accepted the terms of the Bonus Agreement.[14] The Court concludes there was no breach in the manner in which the payments were made. See Gymco Constr. Co. v. Architectural Glass & Windows, Inc., 884 F.2d 1362, 1365 (11th Cir. 1989); Snyder v. Time Warner, Inc., 179 F. Supp. 2d 1374, 1382 (N.D. Ga. 2001) (accepting or retaining benefits may constitute waiver of a breach). See also Malin v. Servisco, Inc., 172 Ga. App. 418 (1984) (individual could not contest a contract's validity when he ratified it by accepting the services provided and conducting himself according to its terms for over a year).

Plaintiff's remaining arguments in which he seeks to avoid the terms of the Bonus Agreement do not have any factual or legal support. Plaintiff alleges the Bonus Agreement "contains *indicia* of fraud, alterations, and other related wrongful acts by the Defendants." Pl. Resp. at 4 (emphasis in original). Plaintiff does not provide any examples, specific or otherwise, of an alleged fraud, what

---

[14] Assuming he had any right to terminate the agreement to avoid his service obligation – which the Court concludes he does not – by retaining the bonus payment, Plaintiff waived any right he may have had.

portions of the Agreement were allegedly altered, or what "wrongful acts" were allegedly committed by the Defendants. He then claims he was "fraudulently induced" to sign the Agreement, and that the Agreement is a contract of adhesion. Neither of these claims has any factual or legal support. The Bonus Agreement is a valid agreement, and Plaintiff is bound by its terms.

## 2. *Statutory Authority*

Defendants next argue that Plaintiff's claims are precluded by statute. Plaintiff claims that 10 U.S.C. § 12203(c) permits him to resign his commission and that the Army's refusal to accept his resignation violates his statutory right to resign. This argument is unfounded. Section 12203(c) provides: "Appointments of Reserves in commissioned grades are for an indefinite term and are held during the pleasure of the President." Section 12203(c) was enacted in 1952 and was in effect when Plaintiff was commissioned on May 4, 1990. The term "indefinite" has a plain and accepted meaning. It is defined as: "having no exact limits" http://www.merriam-webster.com/dictionary/indefinite, or "of undetermined extent, amount or number; unlimited." Shorter Oxford English Dictionary, vol. 1, at 1353 (5th ed. 2002). Section 12203(c) plainly includes a time period with no specific length or determinate end, until the end is permitted by the President of the

United States or his designee in how a resignation is accepted. The Army

Regulations governing resignations, specifically Army Regulation 135-175

pertaining to resignations of obligated officers, have been in effect since at least

1971.[15] Final authority to approve resignations has been delegated to the

Commander of the Army Reserve. <u>See</u> Army Reg. 135-175, ¶ 6-9. The Army has

interpreted this regulation as applying to obligated officers, such as Plaintiff, and

reserves to the final decision-making authority whether a resignation request is one

which qualifies as a proper request under Army Regulation 135-175.

Under the Supreme Court's decision in <u>Chevron</u>, an agency's statutory

interpretation will not be disturbed if the agency's interpretation "represents a

reasonable accommodation . . . [and] unless it appears from the statute or its

legislative history that the accommodation is not one that Congress would have

sanctioned." <u>Guam Industrial Services, Inc. v. Rumsfeld</u>, 405 F. Supp. 2d 16, 21-

22 (D.D.C. 2005) (citing <u>Chevron U.S.A., Inc. v. Natural Resources Defense</u>

<u>Council, Inc.</u>, 467 U.S. 837, 845 (1984)). In <u>Chevron</u>, the Supreme Court

explained that if an agency's policy "represents a reasonable accommodation of

conflicting policies that were committed to the agency's care by the statute, we

_____

[15] The relevant Army Regulations were amended in 1987.

should not disturb it unless it appears from the statute or its legislative history that the accommodation is not one that Congress would have sanctioned." <u>Chevron</u>, 467 U.S. at 845 (internal quotations and citations omitted).

In <u>Parrish</u>, the court rejected the plaintiff's contention that the Army's disapproval of his resignation was arbitrary and capricious because "[a]lthough plaintiff may disagree with the Army's interpretation of its own regulations, the explanation given is neither arbitrary nor capricious as the Army has cogently explained why it has exercised its discretion in a given manner." <u>Parrish</u>, 335 F. Supp. 2d at 674 (citing <u>Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.</u>, 463 U.S. 29, 48 (1983)).

Plaintiff has not given any explanation why the Army's interpretation or exercise of discretion is not reasonable. Plaintiff also has not identified any conflicting policies or reasons why the Army's implementation and interpretation of AR 135-175 are not accommodations which Congress would have sanctioned. The Army's interpretation of its own regulations is reasonable and appropriate.

An "enlistment contract clearly contemplates that the terms of enlistment are subject to existing federal laws and regulations that may not be spelled out in the contract." <u>Santiago v. Rumsfeld</u>, 425 F.3d 549, 555 (9th Cir. 2005). The court in

Santiago noted that courts were unanimous in holding that a statute applies to preexisting enlistment contracts notwithstanding contrary language in the contract. Id. (citing Winters v. United States, 412 F.2d 140, 144 & n. 6 (9th Cir. 1969) and Antonuk v. United States, 445 F.2d 592, 598-99 (6th Cir. 1971) (holding that a federal statute, enacted subsequent to enlistment, trumped the contrary terms of an enlistment contract)). "The application of pre-existing federal law does not violate the terms of [plaintiff's] enlistment contract." Id. at 556. According to 10 U.S.C. § 3013(g)(3), the Secretary of the Army has authority to prescribe regulations to carry out his functions, powers, and duties.

As a commissioned officer in the reserve, Plaintiff is subject to the provisions of Section 12203(c), and his appointment is for an indefinite term.

3.    *Plaintiff's Additional Claims*

a.    Breach of contract and due process

Plaintiff next claims Defendants breached "the bilateral contract governing Petitioner's military service", Am. Compl. at ¶ 4, and violated his due process rights by using "vague, arbitrary, and undefined standards as justification for delaying/disapproving Petitioner's resignation." Am. Compl. at ¶ 80.

Plaintiff claims his Oath of Office is a bilateral contract which Defendants have breached. Plaintiff states that he "no longer accepts the commission or his oath" and "asserts a mental reservation." Pl. Resp. at 8. He claims that "the language in the cadet contract clearly contemplates the acceptance by Plaintiff as a commissioned officer", and he "no longer accepts the indefinite appointment of his Reserve Commission." Id. at 8, 12. Put another way, Plaintiff claims that because he accepted his commission, he also is empowered to "unaccept" it, apparently when and where he chooses.[16]

Plaintiff's claims and arguments are meritless. Plaintiff does not cite to any relevant legal authority to support his claim that he may unilaterally reject the terms of his indefinite appointment or the terms of the Bonus Agreement. To the contrary, it is well-settled that indefinite appointments are granted at the pleasure of the president, 10 U.S.C. § 12203(c), and may be resigned only upon acceptance by the President, who has delegated his authority to accept resignations to the

---

[16] Plaintiff's argument is untenable. If accepted, any officer could resign his commission upon receiving orders to deploy to a combat zone, receiving a transfer to a non-US base in a region he or she does not like, or because the officer simply prefers another line of work. The resignation theory the Plaintiff advances could have the potential to severely deprive the Armed Forces of the authority required to manage its leadership ranks.

Commander of the Army Reserve.  Army Reg. 135-175, ¶ 6-9.[17]  Courts have

consistently upheld a military branch's decision to disapprove an officer's

resignation.  See Parrish v. Brownlee, 335 F. Supp. 2d 661, 669-70 (E.D.N.C.

2004) (declining a motion to enjoin the Army's decision to disapprove an officer's

resignation after he completed his initial Military Service Obligation); Baldauf v.

Nitze, 261 F. Supp. 167, 168 (S.D. Cal. 1966).  See also Santiago, 425 F.3d at 555.

"The [Service] Secretary can exercise discretion to accept [a resignation] or not,

and allow the withdrawal [of the resignation] or not, and his decision will be

sustained if not arbitrary and capricious and contrary to law."  Scarseth v. United

States, 52 Fed. Cl. 458, 480 (Fed. Cl. 2002) (quoting Cole v. United States, 689

F.2d 1040, 1041 (Ct. Cl. 1982)).  The court in Parrish explained:

> Although it is undisputed that plaintiff was not required to serve in the
> Army beyond his eight year military obligation, there is no
> corresponding obligation to the Army to discharge plaintiff
> automatically or to seek affirmation of a desire of continued service.
> Although plaintiff argues that such an obligation is implied by the
> terms of the contract, such an obligation would directly conflict with

---

[17] Plaintiff argues that Defendants' reliance on Section 12203 is improper
because "[n]o claims exist that President George W. Bush has personally directed
or ordered that Plaintiff's resignation be disapproved."  Pl. Resp. at 11.  Plaintiff
does not cite any authority questioning the validity or applicability of Army Reg.
135-175 ¶ 6-9, which explicitly delegates this authority to the Commander of the
Army Reserve.

statutes and regulations . . . that require commissioned officers to be appointed for an indefinite term.

Parrish, 335 F. Supp. 2d at 673-74 (also noting the ample authority holding the Army must retain jurisdiction over a commissioned officer who has fulfilled his obligated term of service).  Defendants have not breached any contract here.

Plaintiff's due process claims are also without merit.  Plaintiff alleges the Army's decision to reject his resignation "constituted an unconstitutional taking of Petitioner's liberty interests and property interests and has deprived Petitioner of due process as well as violating 42 U.S.C. § 1983."  Am. Compl. at ¶ 81.  First, it is well-established that Section 1983 only applies to acts under color of law of any State or Territory and is thus not applicable in cases where the act was committed by a federal agency pursuant to federal law.  See Rosas v. Brock, 826 F.2d 1004, 1007 (11th Cir. 1987).  Second, no due process violations exist.  "[V]iolation by the military of its own regulations constitutes a violation of an individual's right to due process of law . . . [T]he due process clause here requires us not to measure the Army regulations against some constitutional standard, but instead to determine whether the regulations were followed."  Parrish, 335 F. Supp. 2d at 669 (internal citations and quotations omitted); Scarseth, 52 Fed. Cl. at 480.  As a commissioned

officer in the Reserves, Plaintiff does not have a right to an appointment of a particular duration, and thus he has no liberty or property interest to a limited-term appointment. In addition, Plaintiff fails to cite to the "vague, arbitrary, and undefined standards" allegedly applied by the Army in disapproving his resignation. Army Regulations limit the situations in which an obligated officer may resign, and resignation is appropriate to be accepted only when there are circumstances of extreme compassion or in some cases where a member of the clergy seeks to resign. Plaintiff did not argue any extreme compassionate circumstances when he submitted his resignation, and he does not do so now. In rejecting Plaintiff's resignation, the Army provided the specific reasons for its denial, stating that Plaintiff had "failed to demonstrate compassionate circumstances warranting acceptance of his resignation." Am. Compl. Ex. GG at 2. Plaintiff's conclusory allegations do not provide a basis to support his unfounded due process claims.

b. Involuntary servitude

Plaintiff next claims, under 42 U.S.C. § 1983, that Defendants' disapproval of his resignation results in indefinite service and thus constitutes involuntary servitude in violation of his constitutional rights. Am. Compl. at ¶ 77. This claim,

besides being unfounded, is offensive.  It is well-established that Section 1983 only applies to acts under color of law of any State or Territory and is thus not applicable in cases where the act was committed by a federal agency pursuant to federal law.  See Rosas, 826 F.2d at 1007.

The law is also clear that military service – compulsory or otherwise – does not violate the Thirteenth Amendment's prohibition against involuntary servitude. The Thirteenth Amendment to the Constitution states: "Neither slavery nor involuntary servitude, except as punishment for a crime whereof the party shall have been duly convicted, shall exist within the United States, or any place subject to their jurisdiction.  U.S. CONST. amend. XIII.  The Supreme Court and lower federal courts have uniformly held that the constitutional prohibition against involuntary servitude does not apply in the context of military service.  See Arver v. United States, 245 U.S. 366, 390 (1918); Baldauf v. Nitze, 261 F. Supp. 167, 173 (S.D. Cal. 1966).

       c.      Promissory estoppel and fraudulent misrepresentation

Plaintiff's claims of promissory estoppel and fraudulent misrepresentation likewise are rejected because they do not have any factual or legal support. Plaintiff claims that he "detrimentally relied on the Respondents' promise that he

would be required to complete an eight-year term, per the Petitioner's Cadet Contract, and thereafter be able to be released from Respondents [sic] jurisdiction by affirmatively resigning." Am. Compl. at ¶ 84.

Defendants argue that Plaintiff's claim of promissory estoppel must be rejected because: 1) the alleged promise regarding his Cadet Contract has nothing to do with his three-year service obligation under the Bonus Agreement; 2) the alleged promise is not false, and Plaintiff cannot point to any definite promise that he would not be required to serve beyond eight years; and 3) even if Plaintiff could allege a promise that he could resign at will, he cannot show that such reliance is reasonable given the existence of Section 12203(c).

Each of Defendants' arguments refutes Plaintiff's promissory estoppel claim. Plaintiff is an obligated officer under the terms of the Bonus Agreement, and he has not demonstrated any connection between any alleged promise in his Cadet Contract and the Bonus Agreement. Plaintiff also has not pointed to any promise on behalf of Defendants indicating that he could resign at will, or that his service would be limited to eight years. In fact, Plaintiff does not make any attempt to argue that his service between 1998 (the date his initial eight-year service obligation ended) and 2006 (the date he signed the Bonus Agreement) was

involuntary.  Even if Plaintiff did identify an alleged promise by Defendants that Plaintiff could resign at will – which he cannot – Section 12203(c) takes precedent over language in military enlistment contracts which may be contrary to Section 12203(c).  <u>See</u> <u>Santiago</u>, 425 F.3d at 555.

Finally, the Federal Rules of Civil Procedure and Eleventh Circuit law require heightened pleading standards when alleging fraud.  Federal Rule of Civil Procedure 9(b) requires that "all averments of fraud [and] the circumstances constituting fraud shall be stated with particularity."  Fed. R. Civ. P. 9(b).  To satisfy Rule 9(b), a plaintiff's complaint must set forth "(1) precisely what statements were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud." <u>Garfield v. NDC Health Corp.</u>, 466 F.3d 1255, 1262 (11th Cir. 2006); <u>Brooks v. Blue Cross & Blue Shield of Fla., Inc.</u>, 116 F.3d 1364, 1371 (11th Cir. 1997) (internal citations and quotations omitted); <u>accord</u> <u>Ambrosia Coal & Constr. Co. v. Pages Morales</u>, 482 F.3d 1309, 1316-17 (11th Cir. 2007) .  Plaintiff fails to meet this pleading requirement.

Plaintiff merely alleges that Defendants "have made false representations to induce Petitioner to enlist/contract in the Active Reserve for a term of eight years per the Petitioner's Cadet Contract." Am. Compl. at ¶ 90. Plaintiff fails to identify any alleged misrepresentations, who allegedly made the false statements, or why they are allegedly false, either with respect to the Bonus Agreement or his decision to join ROTC in 1986 (which does not impact his separate decision in 2006 to sign the Bonus Agreement). This claim is frivolous.

        d.     Remaining claims

Following his substantive claims, Plaintiff seeks a petition for a writ of habeas corpus, declaratory relief, damages, and attorneys' fees. These miscellaneous additional requests are denied.

The writ of habeas corpus has two jurisdictional requirements: First, it may be granted only if the petitioner is in custody. 28 U.S.C. § 2241(c)(1). Second, for the Court to have jurisdiction over the petition, both the petitioner and the petitioner's custodian must be present in the judicial district. Tartt v. Secretary of the Army, 841 F. Supp. 236, 238 (N.D.Ill. 1993) (citing Schlanger v. Seamans, 401 U.S. 487, 489 (1971). "[T]he writ of habeas corpus has long been recognized as the appropriate remedy for servicemen who claim to be unlawfully retained in the

armed forces." <u>Parisi v. Davidson</u>, 405 U.S. 34, 39 (1972). "When a member of the armed forces has applied for a discharge as a conscientious objector and has exhausted all avenues of administrative relief, it is now settled that he may seek habeas corpus relief in a federal district court on the ground that the denial of his application had no basis in fact." <u>Id.</u> at 35.

Defendants have not challenged the jurisdictional requirements of Plaintiff's petition for a writ of habeas corpus. Defendants argue, though, that a writ of habeas corpus is only available to provide for the relief from *unlawful* imprisonment or custody. <u>See, e.g.</u>, <u>Cook v. Hanberry</u>, 592 F.2d 248, 249 (5th Cir. 1979). Defendants claim that the writ should be denied because Plaintiff cannot state a claim for any unlawful action by the Army, given Plaintiff's contractual service obligation (Bonus Agreement) and applicable federal law (10 U.S.C. § 12203(c)).

Having conducted a thorough and detailed analysis of each of Plaintiff's claims for relief, it is clear that Plaintiff is not subject to *unlawful* imprisonment or custody. None of Plaintiff's claims has any legal or factual support, and Plaintiff is not entitled to a petition for habeas corpus. Plaintiff is also not entitled to

attorneys' fees or damages, and he is not entitled to declaratory relief stating that he is not obligated under the terms of the Bonus Agreement.[18]

## III. CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss [18] is **GRANTED**.

**SO ORDERED** this 4th day of March, 2009.

_William S. Duffey_

WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE

---

[18] Plaintiff also asserts various "class action allegations" allegedly on behalf of "all past, current, and future Reserve Commissioned Unobligated Officers subjected to unlawful coercion, unlawful jurisdiction, unlawful denial of military resignation, unlawful delays in granting and approving their resignations or otherwise victims of breach of contract and/or fraudulent misrepresentation by the United States of America and its agents and employees." Am. Compl. at ¶ 60. Because each of Plaintiff's claims fails to state a claim upon which relief may be granted, these allegations also must be dismissed. The Court additionally notes that it lacks jurisdiction over Plaintiff's claims for damages, which he claims are in excess of $5,000,000.00. Am. Compl. at ¶ 61. Claims against the United States not sounding in tort are under the exclusive jurisdiction of the Court of Federal Claims. 28 U.S.C. § 1491; see also Friedman v. United States, 391 F.3d 1313, 1315 (11th Cir. 2004) ("It is well-established that where a tort claim stems from a breach of contract, the cause of action is ultimately one arising in contract, and thus is properly within the exclusive jurisdiction of the Court of Federal Claims to the extent that damages exceed $10,000.").